IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

K'LEAN B.,[1]

        Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

        Defendant.

Case No. 6:20-cv-02156-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

K'lean B. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in March 1977, making her thirty-eight years old on October 1, 2015, her alleged disability onset date. (Tr. 65, 93.) Plaintiff has a general equivalency diploma and past relevant work experience as a housekeeper and bartender/short-order cook. (Tr. 22, 76, 260.)

Plaintiff alleges disability due primarily to frequent headaches and pain in her right hip, which requires surgical replacement. (*See* Tr. 970-71, showing that Plaintiff "highlight[ed]" these two conditions).

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 4, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 14.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on April 1, 2020. (Tr. 967-97.) On April 24, 2020, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 14-24.) On October 20, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 2-7.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 14-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2015, her alleged disability onset date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[H]ip degenerative joint disease status-post [fracture] surgery; spine disorder; obstructive sleep apnea; migraine[s]; [and] Raynaud's syndrome[.]" (Tr. 16.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 18.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; (2) Plaintiff can stand and walk for four hours during an eight-hour workday; (3) Plaintiff can sit for six hours during an eight-hour workday; (4) Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, and scaffolds; and (5) Plaintiff can tolerate no more than occasional exposure to workplace vibration and hazards, such as unprotected heights and exposed, moving machinery. (Tr. 19, 23.) At step four, the ALJ concluded that Plaintiff was unable to perform her past

relevant work. (Tr. 22.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a storage facility rental clerk, office helper, and electrical accessories assembler. (Tr. 23.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons, supported by substantial evidence, for discounting her symptom testimony. (Pl.'s Opening Br. at 5.) As explained below, the Court agrees and, therefore, reverses the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the

symptoms alleged. (*See* Tr. 20, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard here.

### 1.    Threshold Matters

#### a.    Claim Preservation

The Commissioner claims that the ALJ found that Plaintiff was "not disabled because the evidence did not show her to be as limited as she claimed," and Plaintiff "now asserts [only] that the ALJ did not provide sufficient reasons to support such a finding." (Def.'s Responsive Br. at 1-2.) The Commissioner in turn claims that "[h]aving failed to raise any other argument, [Plaintiff] may not now be heard to dispute the ALJ's treatment of her testimony, evaluation of the medical evidence, findings as to her RFC, or any other issue not argued specifically in her opening brief." (*Id.* at 2, citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

In *Independent Towers*, the Ninth Circuit explained that "a bare assertion of an issue does not preserve a claim," it "review[s] only issues which are argued specifically and distinctly in a party's opening brief," and it has "repeatedly admonished that [it] cannot manufacture arguments for an appellant and therefore [it] will not consider any claims that were not actually argued in [an] appellant's opening brief." 350 F.3d at 929 (simplified). Contrary to the Commissioner's argument, these preservation concerns do not apply here.

In her opening brief, Plaintiff specifically and distinctly challenged whether the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, for discounting her symptom testimony. (Pl.'s Opening Br. at 5-18.) In doing so, Plaintiff also

challenged the ALJ's reliance in his subjective symptom analysis on certain medical evidence, and whether the ALJ's RFC accounts for all of Plaintiff's credible limitations. (*Id.* at 8-15, 17.) Accordingly, to the extent the Commissioner suggests that Plaintiff waived any arguments about the ALJ's reasons for discounting Plaintiff's testimony, including reasons related to certain medical evidence (as opposed to medical opinion evidence), and the RFC (or the VE hypothetical derived therefrom), the Commissioner's preservation argument lacks merit. *See generally Karabajakyan v. Berryhill*, 713 F. App'x 553, 556 (9th Cir. 2017) (explaining that "[t]he ALJ gave clear and convincing reasons for discounting [the plaintiff's] symptom testimony," and thus the ALJ "did not need to incorporate [the plaintiff's claimed] limitations in the RFC finding or in the hypothetical questions [that the ALJ] posed to the VE").

As to medical opinion evidence, Plaintiff does not challenge the ALJ's evaluation of the opinions from the state agency medical consultants, which are identical to the ALJ's RFC, with the exception of the RFC's limitation to no (as opposed to occasional) climbing of ropes, ladders, and scaffolds. (*See* Pl.'s Reply at 1, reflecting that the Plaintiff disputes only whether she waived a challenge to the ALJ's "bases to reject her testimony," and, relatedly, is entitled to a remand for benefits; Tr. 19, 21-22, 72-74, 99-100, showing that the ALJ found the state agency medical consultants' opinions to be "persuasive," but formulated an RFC that further limited Plaintiff to no climbing of ropes, ladders, and scaffolds because the ALJ determined that "a greater [than occasional] limitation should have been provided for [Plaintiff's] ability to climb ropes, ladders, and scaffolds"). Accordingly, Plaintiff has waived any arguments concerning the ALJ's evaluation of the state agency medical consultants' opinions, but she presents no such arguments in this appeal. *See Murchison v. Saul*, 836 F. App'x 594, 595-96 (9th Cir. 2021) (addressing waiver of arguments that are not "specifically and distinctly" addressed, and explaining that the

claimant did not challenge, and therefore "waived any arguments concerning," the ALJ's evaluation of the state agency medical consultants' opinions).

### b.     Standard of Review

The Commissioner argues that "[a]lthough [Plaintiff] takes a different view of the record, it is not enough that the record '*supports*' a contrary conclusion . . . [because] to overturn the ALJ's fact-finding, the record must '*compel[]*' the opposite result." (Def.'s Responsive Br. at 2, quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)). The Commissioner further argues that the Court should apply this "deferential standard" and affirm the Commissioner's decision. (*Id.*)

The Commissioner's argument is contrary to Ninth Circuit precedent. In *Ahearn v. Saul*, 988 F.3d 1111 (9th Cir. 2021), the Commissioner cited this passage from *Elias-Zacarias*, an immigration case, in an SSI case. *Id.* at 1114-15. The Ninth Circuit explained that although there was "nothing unusual about the substance of th[e] appeal that merit[ed] a published opinion," it was "publishing [the] decision to draw attention to the [Commissioner's] incorrect description, in its briefs in this and in other recent SSI cases, of the standard of review." *Id.* at 1114. The Ninth Circuit further explained that Congress adopted the *Elias-Zacarias* standard for "immigration cases," but "[f]or social security cases, Congress adopted a different standard: '[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Id.* at 1115 (quoting 42 U.S.C. § 405(g)). That is significant because Congress's use of "different language" for immigration and social security cases "creates a presumption that it intended the [language] to have different meanings." *Id.* (quoting *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996)).

Consistent with *Ahearn* and the authorities cited herein, the Court is not "restricted to setting aside the ALJ's decision only [if] the evidence in the record compels a contrary

conclusion," and will instead review the ALJ's decision, in particular his decision to discount Plaintiff's symptom testimony, for substantial evidence. *See id.* (same). As noted above, in social security cases, "[s]ubstantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which is "not [a] high" level of "evidentiary sufficiency" and equivalent to "more than a mere scintilla [of record evidence] but may be less than a preponderance." *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*).

### 2.    The ALJ's Decision

Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons, supported by substantial evidence, for discounting her symptom testimony. (Pl.'s Opening Br. at 5.)

### a.    Specificity Requirements

Plaintiff argues that in discounting her testimony, the ALJ did not satisfy the Ninth Circuit's specificity requirements because the ALJ "provided a cursory and incomplete summary of the medical record," did not identify a "specific, clear basis to reject [Plaintiff's] testimony," and "failed to link [Plaintiff's] symptom testimony to specific [record evidence] and explain why those records contradicted her testimony." (Pl.'s Opening Br. at 7, citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) and quoting *Holcomb v. Saul*, 832 F. App'x 505, 506 (9th Cir. 2020)).

*Lambert* and its progeny are instructive as to the level of specificity that Ninth Circuit case law requires. In *Lambert*, the ALJ "noted generally that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this

decision.'" 980 F.3d at 1277. The ALJ also "provided four high-level reasons as to why [the

claimant's] allegations were 'less than fully consistent with the evidence.'" *Id.* Specifically, the

ALJ cited these four reasons:

> First, [the claimant] had 'not generally received the type of medical treatment one
> would expect for a totally disabled individual.' Second, the 'record reflect[ed]
> significant gaps in [claimant's] history of treatment and relatively infrequent
> trips to the doctor for the allegedly disabling symptoms.' Third, [the claimant's]
> 'use of medications does not suggest the presence of impairments which is more
> limiting than found in this decision.' And finally, 'medications have been
> relatively effective in controlling [the claimant's] symptoms.'

*Id.* at 1270.

The Ninth Circuit determined that the ALJ's decision did "not meet the requirements set

forth in our cases and d[id] not permit meaningful review." *Id.* at 1277. The Ninth Circuit held

that the ALJ's generic introductory remark was insufficient, noting that "this boilerplate

statement by way of introductory remark, which is routinely included in ALJ decisions denying

benefits, did not identify what parts of the claimant's testimony were not credible and why." *Id.*

(simplified).

The Ninth Circuit also held that the ALJ's "four high-level reasons" were insufficient. *Id.*

The Ninth Circuit explained that the ALJ's "relatively detailed overview" of the medical history

was "not the same as providing clear and convincing *reasons* for finding the claimant's symptom

testimony not credible." *Id.* at 1278 (citation omitted). The Ninth Circuit also explained that its

"cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony,

. . . [or] draft dissertations when denying benefits," but they "plainly required the ALJ to do more

than was done here, which consisted of offering non-specific conclusions that [the claimant's]

testimony was inconsistent with her medical treatment." *Id.* at 1277 (citations omitted). Further,

the Ninth Circuit explained that it was "understandable" that the district court "attempted to fill

in the ALJ's reasoning" and "shore up the ALJ's decision" by citing activities-related evidence

and comparing it to "specific aspects of the medical evidence" (i.e., the general category under which the ALJ's reasons fit). *Id.* at 1278. The district court's efforts, however, were "unavailing" because "'[a]lthough the inconsistencies identified . . . could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make,' and '[the district court was] constrained to review the reasons the ALJ assert[ed].'" *Id.* (citation omitted).

Similarly, in *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021), the Ninth Circuit explained that "[s]ummarizing [the claimant's] testimony about her limitations from her mental impairments, and later mentioning that her symptoms improved with medication and treatment, does not provide clear and convincing *reasons* to discredit that testimony." *Id.* (citing *Lambert*, 980 F.3d at 1277-78)). The Ninth Circuit therefore held that the ALJ committed "reversible error." *Id.*

By contrast, in *Young v. Saul*, 845 F. App'x 518, 519 (9th Cir. 2021), the Ninth Circuit rejected the claimant's "argument that, by failing expressly to mention [the claimant's] assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it." *Id.* The Ninth Circuit explained that the "ALJ was not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing *Lambert*, 980 F.3d at 1277). The Ninth Circuit held that the ALJ did not err because he "specifically cited [the claimant's] written statements and testimony as among the items he had 'carefully consider[ed],' and he gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.'" *Id.* at 519-20. Those reasons included inconsistent objective medical evidence,

minimal treatment before the claimant's date last insured, which the ALJ found did not support the claimant's "subjective complaints," and a non-examining physician's conflicting opinion. *Id.* at 520.

Here, before turning to the "opinion evidence," the ALJ summarized the "medical record," including records that appear to support Plaintiff's testimony and disability claim. For example, imaging from June 2016, over eight months after the alleged disability onset date, revealed a stress fracture in Plaintiff's right hip, and in 2017 and 2018, providers documented reports of an "abnormal gait" and that Plaintiff's pain medications "were not as effective." (*See* Tr. 20-21.) The ALJ's decision, however, reflects that he made at least one specific finding in support of discounting Plaintiff's testimony. Immediately before stating that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," the ALJ stated that "despite the quite severe allegations regarding the frequency of her headaches, [Plaintiff] admitted that the condition has been stable and unchanging over the years, assumedly even when she was previously working." (Tr. 20, citing Tr. 342, 390, 476, 938.) The ALJ later reiterated that Plaintiff "reported having [twenty-one] headaches per month, but notably, she indicated that their intensity and characteristics 'have not changed over the years,' despite her current lack of use of a prophylactic agent." (Tr. 21, citing Tr. 938.)

Given the ALJ's findings, which address Plaintiff's testimony about a condition she "highlight[ed]" during the hearing before the ALJ (*see* Tr. 970-71) and concern whether Plaintiff was able to work despite the alleged severity of her headaches, the Court finds that contrary to Plaintiff's argument, the ALJ provided a specific and clear basis to discount Plaintiff's testimony. *See Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17,

2022) (rejecting the claimant's preference for "a more granular point-by-point refutation of [her] testimony"); *Young*, 845 F. App'x at 519-20 (holding that the ALJ satisfied the Ninth Circuit's specificity requirements by providing specific reasons for discounting the claimant's testimony about the "limiting effects" of his symptoms, such as "back and knee pain"). Nevertheless, the Court addresses below whether substantial evidence supports the ALJ's finding, and whether the ALJ provided any other specific reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

### b.    Plaintiff's Migraine Headaches

In discounting Plaintiff's testimony, the ALJ found it notable that despite complaining of severe and frequent headaches, Plaintiff also reported that the "intensity and characteristics" of her headaches had "not changed over the years" and her headaches had "been stable and unchanging over the years, assumedly even when she was previously working." (Tr. 20-21, citing Tr. 342, 390, 476, 938.) An ALJ may discount a claimant's testimony based on evidence demonstrating that "the claimant's condition 'ha[d] remained constant for a number of years' and 'ha[d] not prevented [the claimant] from working over that time.'" *Mannion v. Berryhill*, 772 F. App'x 483, 484 (9th Cir. 2019) (quoting *Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988)).

For example, in *McIntyre v. Saul*, 848 F. App'x 699 (9th Cir. 2021), the Ninth Circuit held that the ALJ provided "specific, clear, and convincing reasons to discount [the claimant's] testimony as to her subjective pain or the intensity of her symptoms." *Id.* at 702 (simplified). In support of this holding, the Ninth Circuit explained that the claimant had "acknowledged in previous discussions with her physicians that her long-standing, pre-accident physical and mental health conditions . . . had not prevented her from working up to [thirty] hours a week in the period immediately preceding her accident." *Id.* (citing *Gregory*, 844 F.2d at 667); *see also*

*Gregory*, 844 F.2d at 666-67 (addressing whether the claimant "should have been deemed disabled under the medical-vocational grids," concluding that "substantial evidence indicated that the condition of [the claimant's] back had remained constant for a number of years and that her back problems had not prevented her from working over that time," and thus holding that the ALJ's "decision concerning [the claimant's] back problems was supported by substantial evidence").

Unlike the cases described above, substantial evidence does not support the ALJ's decision to discount Plaintiff's testimony on the ground that the "intensity" and severity of her headaches had "been stable and unchanging over the years" and "not changed over the years," and "assumedly" had not prevented Plaintiff from working. (Tr. 20-21, citing Tr. 342, 390, 476, 938.) Notably, the primary record the ALJ cited in support of his findings (*see* Tr. 20-21, citing Tr. 938 in both instances) demonstrates that Plaintiff reported her headaches did not improve on several medications and had in fact "worsened throughout her life," even though the "features and characteristics," such as phonophobia and photophobia, had "not changed over the years."[3] (*See* Tr. 938-39, on August 13, 2019, Plaintiff's provider noted that Plaintiff's "[m]igraine headaches occur [five] days out of each week, with more than [twenty-one] migraine headache days per month," Plaintiff's "[h]ead pain is centered behind her right eye and temple, radiating down the right side of her head to her neck," Plaintiff has "photophobia, phonophobia, nausea, and rare vomiting," as well as "visual aura if her migraine headache is severe," Plaintiff's "[p]ain often last[s] [up] to [five] days with each headache," Plaintiff had previously tried "gabapentin,

---

[3] "Phonophobia refers to abnormal sensitivity to noise, a common feature of migraine headaches," and "[p]hotophobia refers to light-induced pain, especially of the eyes." *Fontanez v. Colvin*, No. 16-cv-01300, 2017 WL 4334127, at *3 n.6-7 (E.D.N.Y. Sept. 28, 2017) (citation omitted).

topiramate, Depakote, amitriptyline, nortriptyline, propranolol, and . . . Zomig and Imitrex without improvement," a physician previously "manag[ed] [Plaintiff's] migraine headaches, [but] she lost [her] insurance years ago and ha[d] not been able to reestablish," Plaintiff was currently taking a "mildly helpful" medication that was a "butalbital/acetaminophen/caffeine combination" but she was "not currently on a prophylactic agent," Plaintiff has "a history of migraine headaches since [the] age of [thirteen], which have worsened throughout her life," Plaintiff's "[m]igraine headache features in characteristics have not changed over the years," and Plaintiff elected to pursue Botox injections after a "[d]iscuss[ion] [about an] escalation of therapy").

  The other records the ALJ cited are focused on back and hip impairments and Plaintiff's recovery from an August 2016 surgery to repair a hip fracture, and do not demonstrate that Plaintiff's headaches had remained constant over the years. (*See* Tr. 340-45, on December 11, 2015, Plaintiff stated that she was unable to work due to back pain and the provider documented reports of "blurred vision [and] headache[s]"; Tr. 390-93, on October 6, 2016, during a follow-up visit about lower back and right hip pain, Plaintiff reported that she was "walking better and without an assistive device . . . [but] still ha[d] a lot of right hip pain," and the provider noted that in August 2016, Plaintiff underwent surgery to repair a "right hip stress fracture," which was "healing well," Plaintiff's symptoms were "consistent with discogenic pain," Plaintiff had "not improved with time, medications, modification of activity, or rest," imaging revealed "[d]egenerative disc disease at L5-S1 with [a] broad based disc protrusion," and physical therapy was "on hold until after recovery from surgery and release[] by orthopedics"; Tr. 475-78, on April 19, 2017, during a physical therapy evaluation, Plaintiff reported "walking on a [right] broken hip for about [one] year until she found out," she was "unable to squat due to [right]

groin pain," and "walking on a treadmill for about [forty-five] minutes [two to three] days a week with increased [right] hip pain," and the therapist noted that Plaintiff's referral diagnosis was for a "[c]losed fracture of [the] neck of [the] right femur with delayed healing," Plaintiff exhibited pain with several movements, decreased strength in her right lower extremity, decreased "muscular endurance [and] balance/proprioception," and "flexibility deficits promoting functional limitations with walking and squatting without [right] hip pain," and Plaintiff's prognosis was "fair").

Furthermore, Plaintiff's hearing testimony was consistent with the medical evidence that her headaches had worsened over the years. For example, Plaintiff testified that she suffered from "migraines since [she] was [thirteen] . . . but the migraines ha[d] been worse than they've been and . . . [occur] literally almost every day." (Tr. 980.) Plaintiff also testified her headaches "really started worsening" about "ten years ago," in or around 2010, and "got worse again" about "five, six years ago," in 2014 or 2015.[4] (Tr. 981.) Plaintiff stated that her headaches have "been the same since" 2014 or 2015, but added that shortly after receiving Botox injections in the fall of 2019, her migraines "became more severe" and she had "more problems," such as blurry and double vision. (Tr. 981-82.)

The Commissioner also notes that Plaintiff was "not seen for a migraine from October 2017 until March 2019[.]" (Def.'s Responsive Br. at 4.) The ALJ's decision includes the same notation (*see* Tr. 21), but the ALJ did not specifically assert that he was discounting Plaintiff's testimony based on any gap in her treatment history. *See generally Lambert*, 980 F.3d at 1278 (explaining that a reviewing court is "constrained to review the reasons the ALJ asserts")

---

[4] Plaintiff stopped working on or about October 1, 2015. (Tr. 260, *see also* Tr. 238, 248, 280.)

(simplified). Even if the ALJ had done so, the ALJ's decision does not address whether any gap in Plaintiff's treatment history was due to a lack of funds or some other "good reason." *See Joshua R. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-01778-HZ, 2022 WL 1055938, at *4 (D. Or. Apr. 8, 2022) ("Gaps in medical treatment can . . . support an adverse credibility determination as long as the failure to obtain treatment is not due to the claimant's lack of funds or another 'good reason[].'" (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007))). The record includes reports about Plaintiff's lack of funds and other potentially "good reasons" for gaps in her treatment. (*See* Tr. 972-73, on April 1, 2020, the ALJ recognized that there was "some periods of homelessness or maybe even current homelessness" and Plaintiff testified that she did not "have a vehicle or insurance, let alone the money to pay for insurance"; Tr. 883, on June 4, 2019, Plaintiff's provider noted that Plaintiff had not presented for an evaluation because "[s]he had several situational changes and lost her insurance for a while and did not get in for evaluation until now").

For these reasons, the ALJ erred in finding that Plaintiff's migraine headaches had remained constant over the years and had not prevented Plaintiff from working during that time, and that gaps in Plaintiff's treatment history undermined her testimony about her migraine headaches.

### c.    Plaintiff's Reported Activities

The Commissioner argues that the ALJ "reasonably discounted Plaintiff's allegations because they were inconsistent with her admitted activities." (Def.'s Responsive Br. at 5.) The Court disagrees.

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's

testimony and the claimant's reported activities provide a valid reason for an adverse credibility

determination"); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on

[his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's]

claimed limitations"). Here, the Commissioner cites the ALJ's notation about Plaintiff's ability

to (1) "prepare simple meals and . . . occasionally make complete dinners," (2) do laundry and

the dishes, (3) "clean the bathroom sink and toilet," (4) "shop in stores for food and toiletries,"

(5) "visit[] with her friends and family on a daily basis," and (6) "go out with her friends to the

bar for a few hours at a time." (Def.'s Responsive Br. at 5, citing Tr. 20; *see also* Tr. 20, citing

Tr. 275-76.) Substantial evidence does not support discounting Plaintiff's testimony based on

these activities.

 The ALJ suggested that the above activities are inconsistent with Plaintiff's testimony

about "get[ting] headaches five days per week that last between one and three days at a time and

cause blurry vision, and [her] reported . . . inability to stand or walk for more than thirty minutes

at a time." (*See* Tr. 20, the ALJ recounted this portion of Plaintiff's testimony before noting, "on

the other hand," that Plaintiff can perform the activities described above). The record fails to

reflect any meaningful inconsistency between Plaintiff's limited activities and her testimony. *See*

*Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) ("[The

claimant's] limited daily activities were not meaningfully inconsistent with her symptom

testimony.").

 Plaintiff testified that if she stands or walks for "more than half an hour, it hurts worse to

try and move [her] hip and [her hip] tries to lock," that her headaches have worsened over the

years, and that she currently has headaches "[p]retty much every day," which "usually last[]"

between twenty-four to seventy-two hours and interrupt her activities "two-thirds of the time."

(Tr. 980-84; *see also* Tr. 938, 971, Plaintiff reported suffering from five or more headaches per week). Plaintiff's testimony about her headaches and ability to stand and walk does not conflict with her activities. (*See* Tr. 274-76, Plaintiff reported that she spends between ten and ninety minutes preparing her daily meals and has "to take breaks constantly" when she "occasionally" makes "full meals" or "a complete dinner," she takes "breaks [when she is] cleaning," she cleans her sink and toilet once every other week for thirty minutes, she does laundry once every other week for thirty minutes, she does the dishes every day for five to ten minutes, she shops once every other week for thirty to sixty minutes, she visits (i.e., in person or on the phone or computer) with friends and family every day, and she "might go to [a] bar with friends . . . [once] every [two] months," but "can only do [so] for [one to two] hours before [she has] to go home because of pain").

The Commissioner's argument about Plaintiff's reported activities also refers to her "unchanging" headaches and notes that she testified that she "should have" a cane, but the medical record demonstrated that she did not need a cane to walk. (Def.'s Responsive Br. at 5, quoting Tr. 984.) The ALJ did not discount Plaintiff's testimony based on her opinion that she should use a cane. (*See* Tr. 20, the ALJ simply noted that Plaintiff "does not require the use of a cane"; Tr. 278, 984, Plaintiff stated that she "should use [a] cane but [did not] have one" and "should be using a cane or something, but [she does not] have one"). Furthermore, the Commissioner's reliance on Plaintiff's purportedly "unchanging" headaches fails for the reasons discussed above.

For these reasons, the ALJ erred in discounting Plaintiff's testimony based on her reported activities. *See Nicholas W. v. Saul*, No. 3:19-cv-01597-SB, 2021 WL 1612294, at *5 (D. Or. Apr. 26, 2021) (explaining that an "ALJ err[s] by selectively considering evidence of [a

claimant's] activities and ignoring evidence [i.e., portions of related testimony] that contradict[s] his findings").

### d.    Plaintiff's Hip Impairment

In addition to Plaintiff's activities and the above-referenced evidence related to Plaintiff's migraine headaches, the Commissioner also argues that the ALJ appropriately discounted Plaintiff's testimony about her hip impairment on the ground that it is not fully corroborated by the objective medical evidence. (Def.'s Responsive Br. at 3-4.) The Commissioner, however, acknowledges that the ALJ could not discount Plaintiff's symptom testimony on this ground alone. (*Id.* at 3.)

Substantial evidence does not support the ALJ's other reasons for discounting Plaintiff's testimony. *See supra* Part I.B.2b-c. As a result, inconsistencies with the objective medical evidence, or a lack of supporting medical evidence, cannot provide the sole basis for the ALJ's decision to discount Plaintiff's testimony about her hip impairment. *See McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (explaining that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination"); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that "an ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason"). Accordingly, the ALJ committed harmful error in discounting Plaintiff's testimony.

As discussed below, the Court must remand this case for further proceedings. On remand, the ALJ will need to address the record evidence suggesting that Plaintiff's treatment and medications were not effective in controlling her hip pain, and that Plaintiff's August 2016 hip fracture surgery resulted in only temporary improvement in her condition. *See Colter v. Berryhill*, 685 F. App'x 616, 617 (9th Cir. 2017) (addressing a finding about headache

improvement and explaining that the ALJ "failed to analyze the periods of improvement in the context of [the claimant's] treatment history to ensure that the improvement was not temporary," and "treatment records reflecting improvement 'must be viewed in light of the overall diagnostic record'") (citation omitted).

Specifically, in assessing the overall diagnostic record, it will be necessary for the ALJ to address the medical recommendation and findings related to Plaintiff's post-surgery need for a total hip arthroplasty. (*See* Tr. 445-48, on February 8, 2018, Plaintiff's physician noted that Plaintiff's August 2016 hip surgery repaired "a complete stress fracture of the right femoral neck," Plaintiff was "initially doing well" but "then had progressive right hip pain," and she discussed "total hip arthroplasty in detail" with Plaintiff because she had "exhausted non operative treatment options including injections, narcotics and activity modification"; Tr. 449, Plaintiff's provider "recommend[ed] referral" to "discuss hip replacement surgery"; Tr. 451, Plaintiff was "still having pain [one year after her] surgery" and may "need a hip replacement"; Tr. 818, 824, 834, 846, 852, 940, 948, from February 1, 2018 to September 4, 2019, "Right hip has had progressive degenerative changes and will likely need replacement."; Tr. 979-80, on April 1, 2020, Plaintiff and the ALJ discussed her need for hip replacement therapy, which had been delayed due to Plaintiff's inability to stop smoking and Plaintiff "being homeless" and not having an actual "physical . . . bed" to utilize for recovery).

## C.    Conclusion

For these reasons, the Court finds that the ALJ committed harmful error in discounting Plaintiff's symptom testimony because the ALJ failed to provide at least one clear and convincing reason for doing so. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [it] as not

credible"); *see also Valdez*, 746 F. App'x at 677 ("[An] ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))).

## II.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

///

///

///

### B.    Analysis

The Court concludes that it must remand Plaintiff's case for further administrative proceedings because the record has not been fully developed and enhancement of the record would be useful.

A district court may exercise its discretion to "remand for further proceedings if enhancement of the record would be useful." *Fahtima R. v. Comm'r of Soc. Sec.*, No. 18-5970-MJP, 2019 WL 2022461, at *4 (W.D. Wash. May 8, 2019) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). In *Fahtima R.*, for example, the court observed that the "the record show[ed] conflicts between unchallenged state agency doctor opinions and [a physician's improperly discredited] opinions that the ALJ [needed to] address[.]" *Id.* The court therefore remanded the case for further proceedings because "enhancement of the record would be useful." *Id.*; *see also Graham v. Colvin*, No. 14-5311, 2015 WL 509824, at *5-8 (W.D. Wash. Feb. 6, 2015) (remanding for further proceedings and explaining that although the ALJ erred in discounting the claimant's testimony, the claimant did not challenge certain conflicting medical opinions and thus there were outstanding issues in the record about the extent of the claimant's limitations).

As discussed above, Plaintiff does not challenge the ALJ's evaluation of the opinions from the state agency medical consultants, which (1) are identical to the ALJ's RFC, with the exception of the RFC's limitation to no (as opposed to occasional) climbing of ropes, ladders, and scaffolds, and (2) do not necessarily support the limitations Plaintiff claims exceed the ALJ's RFC and/or support a finding of disability (e.g., a need to change positions at will, lift no more than five pounds, maintain attendance within customary tolerances, or lie down throughout the day). (*See* Pl.'s Opening Br. at 17, setting forth Plaintiff's arguments about improperly omitted RFC limitations; Pl.'s Reply at 1, reflecting that the Plaintiff disputes only whether she waived a

PAGE 23 – OPINION AND ORDER

challenge to the ALJ's "bases to reject her testimony," and, relatedly, is entitled to a remand for benefits; Tr. 19, 21-22, 72-74, 99-100, showing that the ALJ found the state agency medical consultants' opinions to be "persuasive," but formulated an RFC that further limited Plaintiff to no climbing of ropes, ladders, and scaffolds because the ALJ determined that "a greater [than occasional] limitation should have been provided for [Plaintiff's] ability to climb ropes, ladders, and scaffolds"). Thus, there are conflicts the ALJ must resolve and further enhancement of the record would be useful. Accordingly, the Court exercises its discretion to remand this case for further proceedings.

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 3rd day of June, 2022.

_Stacie F. Beckerman_
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge